**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

**NICHOLAS ZILLGES,**
          **Plaintiff,**

    v.                                                         Case No. 13-C-1287

**KENNEY BANK & TRUST, et al.,**
          **Defendants.**

## DECISION AND ORDER

Nicholas Zillges has filed this action against Kenney Bank & Trust and several affiliated companies and individuals. He alleges that the defendants terminated his employment as the president and CEO of the bank because he complained internally and to regulators about the defendants' regulatory violations. He also alleges that he was not paid compensation that he was owed at the time of his termination and that two of the individual defendants defamed him. Before me now are the defendants' partial motion to dismiss the complaint for failure to state a claim upon which relief can be granted and Zillges's two motions to amend the complaint.

The motion to dismiss was initially directed to Zillges's original complaint. In response to that motion, Zillges filed his first motion for leave to file an amended complaint. The proposed amended complaint corrects some of the defects identified in the defendants' motion and adds other allegations. The defendants do not oppose the first motion for leave to amend and agree that the amendments have corrected some of the defects identified in the motion to dismiss. However, they argue that even as amended certain of Zillges's claims must be dismissed. These are his claims for conspiracy to injure

business against certain defendants and for negligence. I address whether these two claims should be dismissed below.

Zillges's second amended complaint seeks to add a claim for violation of the whistleblower-protection provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act. The defendants argue that this claim is futile and therefore oppose the motion to amend. I address whether the claim is futile below.

## I. BACKGROUND

The following facts are drawn from the allegations of the first amended complaint, which I accept as true for purposes of resolving the present motions.

Kenney Bank and Trust is a single-location bank chartered in Illinois. Defendants Thomas Tice, Jerry Gagerman, and Kris Axberg are directors of the bank. Axberg is the bank's treasurer. Another defendant, iTeam Companies, Inc., is the bank's sole shareholder. Tice is a director of iTeam, as are defendants Kenneth Biel, Thomas Anderson, and Robert Atwell. Axberg is the CFO and treasurer of iTeam. iTeam owns 85% of the stock of another defendant, iStream Financial Services, Inc. Biel is iStream's CEO, and Axberg is its treasurer.

At the time Zillges became Kenney Bank's president and CEO, the bank was classified as "troubled" and was being closely monitored by the FDIC. During his tenure as president and CEO, Zillges observed conduct that violated federal banking laws, including conduct of certain of the individual defendants. Zillges reported this conduct to the bank's board of directors, the FDIC, and the Federal Trade Commission. He also took steps to prevent or correct the regulatory violations. The defendants did not like any of this, and so they worked together to cause Kenney Bank to terminate Zillges's

employment. Zillges alleges that another reason the defendants decided to terminate his employment was to prevent him from earning stock options.

## II. DISCUSSION

**A.    Conspiracy to Injure Business**

Zillges alleges that all of the defendants conspired to injure him in his business or profession. See Wis. Stat. § 134.01. The Wisconsin Worker's Compensation Act precludes Zillges from bringing a claim for conspiracy to injure business against his employer or any other employee of his employer when the claim arises out of his employment. See Mudrovich v. Soto, 238 Wis. 2d 162, 167–69 (Ct. App. 2000). Zillges does not dispute that his claim arises out of his employment at Kenney Bank, and he therefore concedes that he cannot bring a claim for conspiracy to injure business against Kenney Bank or any of the individual defendants in their capacities as officers or directors of Kenney Bank. Defendants, in turn, concede that the Worker's Compensation Act does not preclude Zillges from pursuing his conspiracy claim against iTeam, iStream, Biel, Anderson, and Atwell, as Zillges was not employed by those entities and those individuals were not officers or directors of Kenney Bank. The issue is whether the Worker's Compensation Act precludes Zillges from pursuing his conspiracy claim against Tice, a director of both Kenney Bank and iTeam, and Axberg, a director and officer of Kenney Bank and an officer of iTeam.

Zillges contends that, under the "dual persona" doctrine, both Tice and Axberg are liable for conspiracy despite their status as his employer. Under this doctrine, "[a]n employer may become a third person, vulnerable to tort suit by an employee, if—and only

if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person." Henning v. General Motors Assembly Div., 143 Wis.2d 1, 15 (1988) (internal quotation marks omitted). The circumstances in which a dual persona will be found are those in which the duality is "firmly entrenched in common law or equity" or where the duality is one created by modern statute. Id. at 19.

The Wisconsin Court of Appeals has found the dual persona test satisfied in two cases, both of which involved a plaintiff who was injured by a machine at work. In Schweiner v. Hartford Accident and Indemnity Co., 120 Wis. 2d 344 (Ct. App. 1984), the plaintiff was injured by a machine manufactured by a company named Universal. The injury occurred during the course of the plaintiff's employment with a company named Thiem. After Universal manufactured the machine, it merged with Thiem. Thiem was the surviving corporation and, by operation of statute, became the successor to all of Universal's liabilities. The Worker's Compensation Act prevented the plaintiff from bringing a tort suit against Thiem because Thiem was his employer and the injury occurred during the course of employment. However, had Universal not merged with Thiem, the plaintiff could have brought a tort suit against Universal for negligence in manufacturing the machine. The court determined that, under these circumstances, Thiem had two personas. The first was the plaintiff's employer; the second was the successor to Universal. The second persona arose because Universal's "existence for the purposes of assuming liability was engrafted by statute onto Thiem." Id. at 354. The court held that because Universal would not have been entitled to immunity under the Worker's

4

Compensation Act had the merger not occurred, Thiem, as the successor to Universal, was not entitled to immunity.

In Rauch v. Officine Curioni, S.P.A., 179 Wis. 2d 539 (Ct. App. 1993), the plaintiff was injured by a machine owned by Thomas Anderson. Anderson had leased the machine to Badger Packaging, the plaintiff's employer, and the plaintiff was injured while using the machine in the course of his employment. Anderson was the president and CEO of Badger Packaging and also owned 85% of the company's stock. Anderson, as president, CEO, and 85% owner of Badger, was the plaintiff's employer and therefore immune from suit by virtue of the Worker's Compensation Act. However, the court determined that Anderson had a separate legal persona as the owner and lessor of the machine that injured the plaintiff, and that therefore he could be liable to the plaintiff "for furnishing equipment that injures a user of that equipment." Id. at 546.

In the present case, Zillges argues that Tice and Axberg have dual personas because they were officers and/or directors of both Kenney Bank and iTeam. I agree. Tice, director of Kenney Bank, is a distinct legal persona from Tice, director of iTeam. Likewise, Axberg, director and treasurer of Kenney Bank, is a distinct legal persona from Axberg, CFO and treasurer of iTeam. Both of these personas could have performed acts in furtherance of the alleged conspiracy to injure Zillges's business. To the extent their iTeam personas performed such acts, Tice and Axberg would be liable for any resulting injuries. However, Tice and Axberg could not be liable for any acts their Kenney Bank personas performed in furtherance of the conspiracy, because those personas were employers of Zillges and thus entitled to immunity under the Worker's Compensation Act.

The next question is whether Zillges has plausibly alleged that Tice and Axberg's iTeam personas participated in the conspiracy. Zillges alleges that, in furtherance of the conspiracy, Tice and Axberg voted to terminate his employment. However, the act of voting to terminate Zillges's employment was performed by Tice and Axberg's Kenney Bank personas. Tice and Axberg, as officers or directors of iTeam, could not have terminated Zillges's employment, since officers and directors of iTeam have no authority to terminate the president and CEO of Kenney Bank. Zillges contends that Tice and Axberg were acting to benefit iTeam rather than Kenney Bank when they voted to terminate him. However, even if this is true, the fact remains that an officer and/or a director of iTeam could not have voted to terminate the president and CEO of Kenney Bank. Therefore, Tice and Axberg's iTeam personas could not have participated in the vote to terminate Zillges.

Still, the complaint plausibly alleges that Tice and Axberg performed other acts in furtherance of the conspiracy, and these acts could form the basis for liability not covered by the Worker's Compensation Act. With respect to Tice, the complaint alleges that he "worked with Biel to secure Zillges' termination." First Am. Compl. ¶ 120. Both Tice and Biel were members of the iTeam board of directors, and thus it is plausible that it was Tice's iTeam persona who worked with Biel in order to set the stage for a vote on Zillges's termination, even if it was Tice's Kenney Bank persona who actually cast the vote to terminate Zillges. Similarly, the complaint alleges that Axberg "worked with other Defendants to secure Zillges's termination." Id. ¶ 121. The "other defendants" include iTeam and various members of the iTeam board. Thus, it is plausible that it was Axberg's iTeam persona who worked with these defendants to set the stage for a vote on Zillges's

6

termination. Accordingly, Zillges has stated plausible claims for conspiracy against Tice and Axberg's iTeam personas, and those claims will not be dismissed as barred by the Worker's Compensation Act.

**B.     Negligence**

Zillges includes a count in his complaint labeled "negligence," which he brings against Tice, Gagerman, and Axberg in their capacities as directors of Kenney Bank. First Am. Comp. ¶¶ 134–40. In substance, however, the claim is one for breach of fiduciary duty—specifically, breach of a director's duty to treat each of the corporation's shareholders fairly. See, e.g., Joregensen v. Water Works, Inc., 246 Wis. 2d 614, 623–24 (Ct. App. 2001). However, no allegation in the complaint states or implies that Zillges was a shareholder of Kenney Bank. Zillges contends that this does not matter because he was terminated the day before the Kenney Bank board of directors was about to vote on whether to approve his employment agreement, under which he would have been granted 300,000 stock options. First Am. Compl. ¶ 86. Zillges's argument appears to be that a director of a corporation owes a fiduciary duty to someone who is not a shareholder of the corporation so long as that person might be granted an option to become a shareholder at some point in the future. However, Zillges cites no cases that support this argument, and he does not show that any corporate-law policy weighs in favor of holding that a director of a corporation owes a fiduciary duty to a person who might be granted an option to become a shareholder but who is not yet a shareholder. Therefore, I conclude that this claim has no legal basis and must be dismissed.

## C. Dodd-Frank Whistleblower Claim

The remaining matter is whether Zillges's proposed second amended complaint states a claim for relief under the whistleblower-protection provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6(h). The defendants argue that it does not and that therefore the proposed amendment is futile. See Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1085 (7th Cir. 1997) (stating that amendment is futile when complaint, as amended, would fail to state a claim upon which relief could be granted).

Dodd-Frank amended the Securities and Exchange Act of 1934 in certain respects. It created a "bounty" program under which whistleblowers may receive financial awards from the SEC for providing the SEC with information relating to violations of the securities laws. See 15 U.S.C. § 78u–6(b). It also created a private cause of action to protect certain whistleblowers from retaliation by their employers. Id. § 78u-6(h). This "whistleblower protection" provision provides that no employer may discriminate against a whistleblower for engaging in certain specified activities. Id.

Currently, there is a disagreement among federal courts on a matter of statutory interpretation concerning the whistleblower-protection provision. The disagreement involves the interplay between the statutory definition of "whistleblower," which is codified at 15 U.S.C. § 78u-6(a)(6), and the protected actions listed in § 78u-6(h)(1)(A)(iii). The definition states that "[t]he term 'whistleblower' means any individual who provides . . . information relating to a violation of the securities laws to the Commission [i.e., to the SEC], in a manner established . . . by the Commission." Under this definition, a person must provide information "to the Commission" in order to qualify as a whistleblower. However,

8

some of the protected activities listed in § 78u-6(h)(1)(A)(iii)—which I will refer to as the "third category of protected activities"—do not necessarily involve disclosures to the SEC. For example, a disclosure under 18 U.S.C. § 1514A, which was enacted as part of the Sarbanes-Oxley Act of 2002, is listed in the third category of protected activities. To make such a disclosure, person does not need to provide information to the SEC; rather, it is enough if the person provides information "to a person with supervisory authority over the employee" or to someone else in the person's company with authority to investigate misconduct. 18 U.S.C. § 1514A(a)(1)©. Thus, under the literal text of Dodd-Frank, a person could make a disclosure that appears to be protected yet fail to qualify as a "whistleblower" within the meaning of the Act because the disclosure was not made to the SEC. Some courts have reasoned that Congress could not have intended this result and have concluded that a person who makes a disclosure that falls within the third category is a "whistleblower" within the meaning of Dodd-Frank even if the disclosure was not made to the SEC. See, e.g., Bussing v. COR Clearing, LLC, __ F. Supp. 2d __, No. 8:12-CV-238, 2014 WL 2111207, at *6–12 (D. Neb. May 21, 2014). Other courts have concluded that a person is a "whistleblower" only if the disclosure was made to the SEC. See, e.g., Asadi v. G.E. Energy (USA), L.L.C., 720 F.3d 620, 623–30 (5th Cir. 2013).[1]

In the present case, Zillges alleges that he made a disclosure that falls within the third category of protected activities—namely, a disclosure protected by 18 U.S.C.

---

[1]The SEC has adopted a rule under which a person who makes a disclosure falling within the third category of protected activities is a whistleblower even if the disclosure was not made to the SEC. See 17 C.F.R. § 240.21F-2(b)(1). Under cases such as Asadi, this rule is invalid.

9

§ 1513(e). Section 1513(e) makes it a federal crime to interfere with a person's employment because that person has provided information to a law-enforcement officer about the commission or possible commission of a federal offense. Zillges alleges that he provided information to members of the FTC and the FDIC, who are law-enforcement officers, about the defendants' commission or possible commission of violations of certain banking laws, namely, 18 U.S.C. §§ 1005 and 1007, and 12 U.S.C. § 5536. Second Am. Compl. ¶¶ 116–18. Obviously, Zillges did not make these disclosures to the SEC, and so he asks that I follow cases such as Bussing and hold that a person may qualify for whistleblower protection under Dodd-Frank even if the person's disclosure was not made to the SEC. However, I need not take sides on the question of whether a person who does not make a protected disclosure to the SEC is a whistleblower. This is so because Zillges fails to meet one of the other requirements for qualifying as a whistleblower under Dodd-Frank—namely, that the disclosure "relat[e] to a violation of the securities laws." 15 U.S.C. § 78u-6(a)(6). The banking laws that the defendants are alleged to have violated are not "securities laws," see 15 U.S.C. § 78c(a)(47), and cases such as Bussing do not suggest that Dodd-Frank's whistleblower protections extend to those who disclose violations or possible violations of non-securities laws. Moreover, the only court to have addressed this issue has concluded that, to be protected as a whistleblower under Dodd-Frank, the plaintiff "must demonstrate that the disclosure at issue relates to a violation of federal securities laws." Nollner v. Southern Baptist Convention, Inc., 852 F. Supp. 2d 986, 994 (M.D. Tenn. 2012). Here, Zillges has not alleged or shown that his disclosure relates to a violation of federal securities laws, and so he has not stated a claim under Dodd-Frank's whistleblower-protection provision regardless of whether that provision protects individuals

who make disclosures to entities other than the SEC. Accordingly, Zillges's motion for leave to file a second amended complaint will be denied on the ground that the proposed amendments would be futile.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Zillges's motion for leave to file a first amended complaint is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Zillges's "negligence" claim is dismissed.

**IT IS FURTHER ORDERED** that Zillges's motion for leave to file a reply brief is **GRANTED**.

**FINALLY, IT IS ORDERED** that Zillges's motion for leave to file a second amended complaint is **DENIED** on the ground that the proposed amendments would be futile.

Dated at Milwaukee, Wisconsin, this 4th day of June 2014.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge